**INDIANA WASTE SYSTEMS, INC.,**
**Appellant (Plaintiff Below),**

v.

**BOARD OF COMMISSIONERS OF the**
**COUNTY OF HOWARD, Indiana,**
**Appellee (Defendant Below).**

No. 2–277A58.

Court of Appeals of Indiana,
Second District.

April 26, 1979.

Frederick J. Graf, Indianapolis, James R. Butcher, Kokomo, for appellant.

Theo. L. Sendak, Atty. Gen., Indianapolis, Daniel J. Harrigan, Bayliff, Harrigan, Cord & Maugans, Thomas J. Simmons, Kokomo, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Indiana Waste Systems, Inc. (Systems) appeals the trial court's decision in this declaratory judgment action holding Howard County Ordinance No. 1969–3[1] (the Ordinance) valid, claiming the trial court erred in that: (1) the State had preempted the field of sanitary landfill regulation; (2) Section 401 of the Ordinance encroached upon the statutory powers of the Howard County Board of Zoning Appeals; and (3) Section 401 of the Ordinance sets forth no standards for its application and therefore violates the due process and equal protection clauses of the United States and Indiana Constitutions.

1. Ordinance No. 1969–3:

   An ordinance regulating collection and disposal of garbage, trash and refuse in the unincorporated territory of Howard County, Indiana, and providing for licensing of persons collecting and disposing of such garbage, trash and refuse in the unincorporated

We reverse and find Section 401 of the Ordinance invalid.

## FACTS

This declaratory judgment action involves a Howard County ordinance regulating sanitary landfills, prosaically known as garbage dumps.[2] The ordinance requires, *inter alia,* that all landfill sites in Howard County be approved by the Howard County Board of Commissioners (Commissioners).

Systems, an Indiana corporation engaged in collecting and disposing of solid waste, purchased a 100–acre tract of land in Howard County with the intent of converting it to a sanitary landfill. Systems conducted engineering tests to determine the suitability of the land. It then secured the approval of the Howard County Board of Zoning Appeals, received a favorable advisory opinion from the Howard County Plan Commission, and secured permits for the landfill's operation from the Indiana State Board of Health, the Indiana Stream Pollution Control Board, and the Kokomo-Howard County Board of Health.

After satisfying the requirements of these governmental agencies, Systems petitioned the Commissioners for approval of the landfill site, pursuant to Section 401 of the Ordinance. Section 401 states:

> Site shall be subject to the approval of the Board of Commissioners of the County of Howard, Indiana. (hereinafter referred to as Section 401)

The Commissioners held three hearings at which Systems and those opposed to site approval for the landfill made presentations. On July 22, 1974, the Commissioners denied approval of the landfill site.

In January, 1975, at the request of Systems, the Commissioners again held two

territory of Howard County, Indiana, and providing penalties for violation of such ordinance.

2. *Mountaineer Disposal Service, Inc. v. Dyer* (1973), 156 W.Va. 766, 197 S.E.2d 111 (Haden, J.).

hearings on the matter. And approval was denied for a second time on February 18, 1975.

Systems filed this action for a declaratory judgment on May 1, 1975, seeking to have the Ordinance ruled invalid. On September 1, 1976, the trial court ruled the ordinance valid.

Systems appeals.

## ISSUES

*ISSUE ONE*—Did Systems properly proceed under the Uniform Declaratory Judgment Act (Ind.Code 34–4–10–1 to –16)?

*ISSUE TWO*—Did the Indiana legislature preempt the power of local government to regulate sanitary landfills by the passage of the 1972 Environmental Management Act (Ind.Code 13–7–1–1 to 18–1)?

*ISSUE THREE*—Does Section 401 encroach upon the statutory powers of the Howard County Board of Zoning Appeals?

*ISSUE FOUR*—Is the Ordinance unconstitutional in that it violates the due process and equal protection clauses of the United States and Indiana Constitutions?

As to Issue One, Commissioners maintain that Ind.Code 17–1–14–24 provided Indiana Waste Systems with the sole means of appealing a decision of the Commissioners, therefore a declaratory judgment action could not be maintained. Systems asserts its rights are vitally affected by the ordinance in question making this precisely the type of situation for which the Uniform Declaratory Judgment Act was designed.

As to Issue Two, Systems contends that the 1972 Environmental Management Act preempted any local regulation of sanitary landfills by calling for regulation on a statewide basis. Commissioners respond that, instead of preempting local landfill regulation, the Environmental Management Act has given local governments more power to regulate solid waste disposal.

As to Issue Three, Systems argues that Ind.Code 18–7–5–82 gives the Board of Zoning Appeals sole power to hear and decide special land use questions, and that by requiring landfill site approval, the Commissioners are attempting to exercise power already delegated to the Board of Zoning Appeals. Commissioners counter that Ind. Code 18–7–5–82 does not act as a limit on the power of county commissioners, and furthermore, that Ind.Code 17–2–22–4 gives the Commissioners specific power to pass ordinances regulating the disposal of solid waste.

As to Issue Four, Systems maintains that the ordinance violates equal protection because it is so vague that it gives local officials the power to arbitrarily discriminate between citizens. In addition, the ordinance violates due process in that it sets forth no standards which notify a person what is required of him thereby making it subject to arbitrary application. Commissioners maintain there is no evidence that the ordinance has been applied in a discriminatory or arbitrary manner, and that the ordinance is not unconstitutionally vague simply because clear language might have been used.

Although we reverse as to Issue Four, we discuss the other issues raised because of the likelihood that they may rise again.

## DECISION

*ISSUE ONE*

*CONCLUSION*—Systems was not precluded from bringing a declaratory judgment action by its failure to appeal the Commissioners' decision under Ind.Code 17–1–14–24.

■ Like Monet repetitively painting his beloved lily pond at Giverny, courts are wont to state the general principle that a litigant must exclusively pursue available statutory remedies. *Marhoefer Packing Co. v. Ind. Dept. of State Revenue* (1973), 157 Ind.App. 505, 301 N.E.2d 209; *Decatur County Rural Elec. Membership Corp. v. Public Service Co.* (1971), 150 Ind.App. 193, 275 N.E.2d 857; *Cooper v. County Bd. of*

*Review of Grant County* (1971), 150 Ind. App. 232, 276 N.E.2d 533. *See Paynter v. Marion County Superior Court, Room No. 5* (1976), 264 Ind. 345, 344 N.E.2d 846; *Brutus v. Wright* (1975), 163 Ind.App. 366, 324 N.E.2d 165; *State v. Frye* (1974), 161 Ind. App. 247, 315 N.E.2d 399. But it is not necessarily so. *See Wilson v. Review Bd: of Indiana,* (1979), Ind., 385 N.E.2d 438; *I.H.S. A.A. v. Raike* (1975), Ind.App., 329 N.E.2d 66.

The Commissioners point to Ind.Code 17–1–14–24 as the exclusive remedy available to Systems. It provides:

*From all decisions of such commissioners there shall be allowed an appeal to the circuit* (or common pleas) *court,* by any person aggrieved; but if such person shall not be a party to the proceeding such appeal shall not be allowed, unless he shall file in the office of the county auditor his affidavit setting forth that he has an interest in the matter decided, and that he is aggrieved by such decision, alleging explicitly the nature of his interest. (emphasis added).

The words "any decision" have been interpreted consistently to mean only decisions which are "judicial" in character. *Board of Commissioners of Dearborn County v. Droege* (1946), 224 Ind. 446, 68 N.E.2d 650; *Farley v. Board of Commissioners of*

*Hamilton County* (1890), 126 Ind. 468, 26 N.E. 174; *Bryant v. Lake County Trust Company* (1975), Ind.App., 334 N.E.2d 730; *Christy v. Board of Commissioners of Porter County* (1973), 156 Ind.App. 268, 295 N.E.2d 849; *Kraus v. Board of Commissioners of County of Miami* (1907), 39 Ind.App. 624, 80 N.E. 544.

*Bryant v. Lake County Trust Company, supra,* used this language:

The seemingly broad language of IC 1971, 17–1–14–24, *supra,* authorizing appeals from "all decisions" of a Board of County Commissioners, has been consistently construed by our courts as authorizing only appeals from decisions of such Boards which are judicial in character. . . . Thus, any act by such a Board which is administrative, ministerial, discretionary or legislative in nature is not reviewable under the authority of IC 1971, 17–1–14–24, *supra.* [citations omitted]

334 N.E.2d at 734.

So, if Systems was appealing the County Commissioner's decision denying approval of the landfill site, we would face the delicate task of determining whether such a decision (tantamount to licensing) was "judicial in character".[3] If the decision be deemed judicial in character, the statutory

3. Only two recent cases address this issue, both involving clearly legislative decisions. *See Bryant v. Lake County Trust Co., supra; Christy v. Board of Commissioners of Porter County, supra.* Other cases discussing this point date back to the early years of this century and before, offering little guidance to the application of what at times must be at best arbitrary labeling. *See, e. g., Gannon v. State* (1924), 195 Ind. 596, 145 N.E. 283 (declaring results of an election on whether a county seat should be moved a judicial decision); *Starry v. Board of Commissioners of Warren County* (1894), 136 Ind. 207, 35 N.E. 1100 (settlement with township officers a ministerial act); *Potts v. Bennett* (1894), 140 Ind. 71, 39 N.E. 518 (obtaining insurance policy on county property an administrative or ministerial function, but allowance or disallowance of claim against county a judicial action); *Board of Commissioners of Vigo County v. Davis* (1893), 136 Ind. 503, 36 N.E. 141 (setting of judicial salaries is discretionary decision); *Dayton Gravel Road Co. v. Board of Commissioners of Tippecanoe*

*County* (1891), 131 Ind. 584, 31 N.E. 363 (decision not to purchase a privately owned gravel road a judicial decision); *Bunnell v. Board of Commissioners of White County* (1890), 124 Ind. 1, 24 N.E. 370 (making settlements with township trustee an administrative or ministerial function); *Platter v. Board of Commissioners of Elkhart County* (1885), 103 Ind. 360, 2 N.E. 544 (selling county property a ministerial act); *Sims v. Board of Commissioners of Monroe County* (1872), 39 Ind. 40 (denial of civil war benefits solely within the discretion of county commissioners and not a judicial decision); *Grusenmeyer v. City of Logansport* (1871), 76 Ind. 549 (where board has no discretion to grant or refuse an application if proper preliminary steps have been taken, the decision is judicial and appealable); *Hall v. Kincaid* (1917), 64 Ind.App. 103, 115 N.E. 361 (proceedings to move county seat to new location a ministerial act); *Kraus v. Board of Commissioners of the County of Miami, supra* (awarding contract is an administrative act).

appeal procedure should have been followed.

But such is not the case. Systems has *not* challenged the Commissioners' act of denying the site approval, whether that act be judicial, administrative, or discretionary. Rather it asserts that the Ordinance itself— which is a *legislative* enactment of the County Commissioners—is invalid.[4] In challenging the validity of the Ordinance, Systems is assailing a *legislative* determination by the Commissioners, not a judicial decision. Such legislative decisions are not appealable under the procedure set out in Ind.Code 17–1–14–24. *Bryant v. Lake County Trust Co., supra; Christy v. Board of Commissioners of Porter County, supra.*

Had Systems attempted to challenge the validity of the Ordinance by appealing under Ind.Code 17–1–14–24, such an appeal would have been subject to dismissal because it was not judicial in character. *Bryant v. Lake County Trust Co., supra; Christy v. Board of Commissioners of Porter County, supra.* Thus, the statutory remedy of appeal was not available to Systems, and Systems' declaratory judgment action can not be defeated on failure to take an appeal.[5]

---

4. *See, e. g., Wilson v. Review Board of Ind. Emp. Sec. Div.* (1979), Ind., 385 N.E.2d 438, an appeal from a Review Board decision in which the Supreme Court stated:

> Wilson's complaint did not raise as an issue the denial of her individual claim for benefits. Rather, the gist of her action was a constitutional challenge to the procedures employed by the Division.

At 441.

5. This case must be distinguished from our recent decision in *Thompson v. Medical Licensing Bd. of Indiana* (1979), Ind.App., 389 N.E.2d 43. The statutory remedy in that case was the comprehensive Administrative Adjudication Act (Ind.Code 4–22–1–1 to 4–22–1–30). The issue raised in that case was whether the appellant could circumvent the appeal procedure available to him under the AAA by bringing a Declaratory Judgment action. In this case we do not reach that issue because of our threshold determination that the appeal procedure under Ind.Code 17–1–14–24 was not available to Systems.

We observe that even if the appeal procedure of Ind.Code 17–1–14–24 had been available, we could have held it unnecessary to follow the statutory appeal procedure as the ordinance's validity was attacked in its entirety, relying on *State ex rel. City of South Bend v. St. Joseph Superior Court* (1957), 238 Ind. 88, 148 N.E.2d 558; *State ex rel. City of South Bend v. Marckle* (1938), 215 Ind. 74, 18 N.E.2d 764. In these cases, which involved an appeal statute very similar to the one in the present case, our Supreme Court determined that when a zoning ordinance was being attacked in its entirety without limitation as to the real estate affected, it was not necessary to resort to the statutory appeal procedure. Rather, a direct declaratory judgment act challenging the ordinance could be maintained. *See City of East Chicago v. Sinclair Refining Co.* (1953), 232 Ind. 295, 111 N.E.2d 459; *Bryant v. Lake County Trust Co.* (1972), 152 Ind.App. 628, 284 N.E.2d 537.

The vitality of these cases is somewhat suspect, however.

First, these decisions are contrary to the general rule of administrative law which requires exhaustion of administrative remedies unless the equities of the situation demand otherwise; for example, the remedy at law is inadequate, or to require exhaustion would result in irreparable harm. *Cf. Thompson v. Medical Licensing Bd. of Ind., supra; South Bend Federation of Teachers v. Nat'l Education Ass'n* (1979), Ind.App., 389 N.E.2d 23 (both *Thompson* and *South Bend Federation of Teachers* were decided under the provisions of the Administrative Adjudication Act, Ind.Code 4–22–1–1 to –30).

Second, the holdings of these cases, with one exception, have been limited to zoning appeals (which are appealed under a special statute and not the AAA). That lone exception is *Amburgey v. Miller* (1977), Ind.App., 362 N.E.2d 869, a case in which a city ordinance requiring licensing of heating and ventilating contractors was challenged. The Third District of this court held, without discussion, that when an ordinance was challenged as unconstitutional on its face, a direct action could be maintained without exhausting administrative remedies, citing *City of East Chicago v. Sinclair Refining Co., supra,* and *State ex rel. City of South Bend v. St. Joseph Superior Court, supra.* That case went on to hold, however, that failure to follow an administrative review procedure provided in a municipal ordinance (as opposed to *statutory* review procedures) does not deprive a court of jurisdiction in the matter.

Even in the zoning area, *State ex rel. City of South Bend v. St. Joseph Superior Court, supra,* remains the only Supreme Court case in which a direct challenge to a zoning ordinance has been allowed without exhaustion of administrative remedies.

Finally, no case since *State ex rel. South Bend v. Marckle, supra,* decided in 1934, has attempted to explain the reasoning behind this "challenging the entirety" exception to the gen-

*ISSUE TWO*

*CONCLUSION*—Local government regulation of sanitary landfills was not preempted by the 1972 Environmental Management Act (13–7–1–1 to –18–1).

██ The power of county commissioners to regulate solid waste disposal is set forth in Ind.Code 17–2–22–4.

In effect at the time in question was Ind.Code 17–2–22–4,[6] which stated:

> For the protection of public health, *the board of commissioners of any county, in* addition to its other powers, *shall have the power* and authority *to adopt* and enact *ordinances regulating the public disposal of garbage and rubbish on any land* which is *situated outside the corporate limits of any city or town.* Such ordinances shall provide that any person, firm or corporation who shall violate any provision of the ordinance shall be guilty of a misdemeanor, and, on conviction, the violator shall be punished for the first offense by a fine of not more than five hundred dollars [$500]; for the second offense by a fine of not more than one thousand dollars [$1,000]; and for the third and each subsequent offense by a fine of not more than one thousand dollars [$1,000] to which may be added imprisonment for any determinate period not exceeding ninety [90] days, and each day after the expiration of the time limit for abating insanitary conditions and completing improvements to abate such conditions as ordered by the county board of health, or by the duly appointed health officer of the county, shall constitute a distinct and separate offense. (emphasis supplied)

The direct thrust of the above provision is to lodge in the Board of County Commissioners the power to deal with society's inelegant and odoriferous offal.

Systems relies on the statement of purpose in the Environmental Management Act, Ind.Code 13–7–1–1, to show preemption by the state of local powers. It provides:

> The purpose of this article [13–7–1–1— 13–7–18–1] is to provide for *evolving policies for comprehensive environmental development and control on a statewide basis* ; and to unify, coordinate, and implement programs to provide for the most beneficial use of the resources of the state and to preserve, protect and enhance the quality of the environment so that, to the extent possible, future generations will be ensured clean air, clean water, and a healthful environment. (Emphasis supplied.)

There is no hint of preemption in the general language of this provision as we read it. This is particularly so in light of other provisions of this act, which speak for themselves:

Ind.Code 13–7–3–1 states:

> It shall be the duty of the [Indiana Environmental Management Act] board to:

> . . . . .

> (d) *Encourage and assist local units of government in developing programs and facilities for* air, water, radiation, odor, and noise pollution control, water or waste-water treatment, water source development, and *solid waste disposal.* (emphasis added)

Ind.Code 13–7–15–2 is similar:

eral requirement of exhaustion, and the reasoning in that case was largely based on an attempt to clarify the "confusing" language of a previous Appellate Court decision. *Id.* 215 Ind. at 81, 18 N.E.2d at 767. The infrequent cases which have followed have been content with simply stating the rule. *See City of East Chicago v. Sinclair Refining Co., supra; State ex rel. City of South Bend v. St. Joseph Superior Court, supra; Amburgey v. Miller, supra; Bryant v. Lake County Trust Co., supra.*

**6.** This statute was amended in 1978. Ind.Code (1978 Supp.) 17–2–22–4 now states:

> The board of commissioners of any county, in addition to its other powers, may adopt ordinances regulating the public disposal of garbage and rubbish on any land which is situated outside the corporate limits of any city or town.

The board *shall encourage and advise local governmental units* referred to in Chapter 1, Sec. 2(3) [including county governments] hereof *in developing facilities or establishing standards for* air, water, odor, and noise pollution control, water or waste-water treatment, water resource development, and *solid waste disposal.* Any facility or standard of such local governmental unit shall meet the minimum state requirements or standards as established by the board and the agencies.

*If the board finds that such local governmental units have not developed plans* which provide for adequate water supply, air, water, or waste-water treatment or solid waste disposal facilities, the board or an agency may hold a public hearing and if the facts support such conclusion, the board may order the affected local governmental units *to proceed to form regional water, sewage, air or solid waste districts* . . . . (emphasis added)

How can local units of government be "encouraged", "assisted" and "advised" if they no longer have power to deal with the subject matter involved?

Also militating against preemption is Ind. Code 17–2–2.5–7 [7] which provides that a State law shall preempt a field from local regulation only if it contains an express provision preempting the area, or the statute is so comprehensive that it clearly indicates the legislature's intention to preclude any action by the county on the same subject. The Environmental Management Act obviously meets neither of these tests.

Finally, the statute specifically granting the commissioners power to pass ordinances regulating solid waste disposal (Ind.Code 17–2–22–4) was amended in 1978.[8] This amendment retained the specific powers of county commissioners to adopt ordinances dealing with solid waste disposal, a further indication that the Environmental Management Act was never intended to preempt this field from local regulation.

*ISSUE THREE*

*CONCLUSION*—The statutory powers of the Howard County Board of Zoning Appeals did not prevent the Commissioners from passing an ordinance regulating solid waste disposal in Howard County.

■ Systems places great emphasis on the specific power lodged in the Board of Zoning Appeals to grant a special use of property (in this case a landfill). *See* Ind. Code 18–7–5–82.[9] Systems counts on *First Church of the Nazarene v. Weaver* (1972), 154 Ind.App. 157, 289 N.E.2d 155 to breathe life into its argument that the exclusive

7. 17–2–2.5–7(b) states:
   (b) Except as otherwise provided in this chapter, no law of the general assembly in effect before July 1, 1975 shall be construed as indicating the intention of the general assembly to preempt the subject matter of such law or to occupy the field in which such law operates, so as to deny or supersede the power of any county to enact an ordinance or exercise a power dealing with the same subject matter, *unless such law contains an express provision indicating such intention, or unless the terms and provisions of such law are so comprehensive as to completely occupy the field* of such subject matter, and clearly indicate the intention of the general assembly to preclude any action by a county relating to the same subject matter. (emphasis supplied)

8. Acts 1978, P.L. 2, § 1708. *See* footnote 6.

9. Ind.Code 18–7–5–82 states:
   The board of zoning appeals shall:

1. Hear and determine appeals from and review any order, requirement, decision or determination made by an administrative official or board charged with the enforcement of any ordinance or regulation adopted pursuant to sections 56 through 65 [18–7–5–58—18–7–5–68] of this act.
2. Permit and authorize exceptions to the district regulations only in the classes of cases or in particular situations as specified in the ordinance.
3. Hear and decide special exceptions to the terms of the ordinance upon which the board is required to act under the ordinance.
4. Authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

powers to grant special uses for sanitary landfills prohibits any other agency from regulation or control. This court held in *First Church* that a city council has the power to zone or rezone property, but that it could not reserve to itself the power to grant special uses. Such power, by statute, is given to the board of zoning appeals.

Had that case involved solid waste disposal, the argument might be persuasive. But in dealing with this specific area, we must also consider and give effect to the statute (Ind.Code 17–2–22–4) specifically granting county commissioners the power to pass ordinances regulating solid waste disposal.

As previously stated, Ind.Code (1976) 17–2–22–4 specifically gave the Commissioners the power to enact ordinances regulating the disposal of garbage and rubbish within their county. And this power was left untouched by the 1978 amendment.[10]

In construing these two statutes, three rules of statutory interpretation are applicable—all pointing to the Commissioners having the power to pass the Ordinance.

■ First, and most importantly, if one statute deals with a subject in general terms and another deals with a specific part of the same subject, the provisions of the specific statute should prevail over any inconsistent provision of the general statute. *Grether v. Indiana State Board of Dental Examiners* (1959), 239 Ind. 619, 159 N.E.2d 131; *Economy Oil Corporation v. Indiana Department of State Revenue* (1974), 162 Ind.App. 658, 321 N.E.2d 215; *Etherton v. Wyatt* (1973), 155 Ind.App. 440, 293 N.E.2d 43. Here the general statute grants a board of zoning appeals the power to determine special uses of land. However, the more specific statute gives the power to regulate solid waste disposal to the county commissioners, and it should prevail.

■ Second, statutes which relate to the same general subject matter (here, use of land) are in pari materia. 26 I.L.E. *Statutes* § 130. They should be construed with reference to each other in order to give effect to the provisions of each. *State v. Doversberger* (1972), 153 Ind.App. 563, 288 N.E.2d 585; *Demoss v. Demoss* (1964), 135 Ind.App. 548, 195 N.E.2d 496. By construing these statutes as we do, we are giving force and effect to each. *See Combs v. Cook* (1958), 238 Ind. 392, 151 N.E.2d 144; *Sekerez v. Youngstown Sheet & Tube Company* (1975), Ind.App., 337 N.E.2d 521; *Salem Community School Corporation v. Easterly* (1971), 150 Ind.App. 11, 275 N.E.2d 317. Our interpretation gives county commissioners full power to regulate solid waste disposal within their counties, while preserving for the board of zoning appeals its general power to grant special uses. An opposite interpretation would preserve the board of zoning appeals' power, but at the expense of the Commissioners' ability to adopt ordinances dealing with solid waste disposal—the power specifically granted by Ind.Code 17–2–22–4.

■ Third, the later of two statutes covering the same subject area is controlling as to any conflicting provisions. *State Board of Tax Commissioners v. Daviess Circuit Court* (1967), 249 Ind. 580, 230 N.E.2d 761; *Economy Oil Corp. v. Indiana Department of State Revenue, supra*; 26 I.L.E. *Statutes* § 130. The board of zoning appeals' general powers statute was enacted in 1947.[11]

But the power of county commissioners to regulate solid waste disposal was created in 1953[12] and retained when Ind.Code 17–2–22–4 was amended in 1978[13]—another indicator that the more specific statute should prevail.

Thus we conclude that the passing of the Ordinance by the Commissioners in accordance with the specific powers granted by Ind.Code 17–2–22–4 did not unlawfully encroach upon the statutory powers of the Howard County Board of Zoning Appeals.

**10.** *See* n. 6, *supra.*

**11.** Acts 1947, ch. 174, § 77.

**12.** Acts 1953, ch. 80, § 4.

**13.** Acts 1978, P.L. 2, § 1708.

*ISSUE FOUR*

*CONCLUSION*—Section 401 (of the Ordinance) does not set forth any standard for its application, and therefore is unconstitutional as violative of the "due process" guarantees of the United States [14] and Indiana [15] Constitutions.

■ To recapitulate, Section 401 states, without further elaboration, that:

Site shall be subject to the approval of the Board of Commissioners of the County of Howard, Indiana.

■ With or without benefit of counsel, Commissioners ignored a long standing rule in Indiana that an ordinance which requires a local legislative body to give its approval before a certain activity may be conducted, must establish standards by which such approval may be granted. *Ensley v. State ex rel. Brown* (1908), 172 Ind. 198, 88 N.E. 62; *City of Elkhart v. Murray* (1905), 165 Ind. 304, 75 N.E. 593; *City of Plymouth v. Schultheis* (1893), 135 Ind. 339, 35 N.E. 12; *City of Richmond v. Dudley* (1891), 129 Ind. 112, 28 N.E. 312. *See Indiana University v. Hartwell* (1977), Ind.App., 367 N.E.2d 1090. Two of these vintage but still vital cases are particularly pertinent.

*City of Plymouth v. Schultheis* involved a city ordinance making it unlawful to carry on the business of a tannery within one mile of the city limits without a permit from the city council. Our Supreme Court held this ordinance invalid because it did not define the conditions under which tanneries may be conducted and left the granting of such permits to the uncontrolled discretion of the city council.

A similar result was reached in *City of Richmond v. Dudley*, in which an ordinance required city council approval for the storing within the city of more than five barrels of naphtha, gasoline or any inflammable oils. While the court recognized a great public interest in regulating the storage of such inflammable substances, it found that the lack of standards set forth in the ordinance left it subject to arbitrary action. It was held invalid.

Recently in *Podgor v. Indiana University* (1978), Ind.App., 381 N.E.2d 1274, we alluded to the reasons for requiring standards:

In order to satisfy due process, an administrative decision must be in accord with previously stated, ascertainable standards. . . . This requirement is to make certain that administrative decisions are fair, orderly and consistent rather than irrational and arbitrary. The standards should be written with sufficient precision to give fair warning as to what the agency will consider in making its decision.

*Id.* 381 N.E.2d at 1283.

While expressed in terms of "administrative decisions," this reasoning is consistent with our Supreme Court's holdings in *City of Plymouth v. Schultheis, supra,* and *City of Richmond v. Dudley, supra.*

A New Jersey Superior Court, speaking of this specific type or ordinance, recognized the need for standards with this language:

The right to grant or refuse a license or permit in the discretion of the municipal governing body is invalid unless it establishes uniform rules and regulations as to all persons therein. . . .

Unless there is in existence some rule of conduct to secure an impartial execution of policy in order to prevent inequality or oppression, there arises an infringement of the fundamental right of private property. [citations omitted]

*Antonelli Construction Co., Inc. v. Milstead* (1955), 34 N.J.Super. 449, 458, 112 A.2d 608, 613–14. *See Continental Oil Company v. City of Twin Falls* (1930), 49 Idaho 89, 286 P. 353. *Cf. Tyler v. Baltimore County* (1968), 251 Md. 420, 247 A.2d 704, and *Mountaineer Disposal Service, Inc. v. Dyer* (1973), 156 W.Va. 766, 197 S.E.2d 111 (landfill permits ordered issued when applicants met stated requirements).

Here, as in *City of Plymouth v. Schultheis* and *City of Richmond v. Dudley,* the

---

**14.** *U.S.Const.* 14th Amend.

**15.** *Ind.Const.* art. 1, § 12.

ordinance requires the approval of the local legislative body, but sets *no guidelines* as to the basis for such approval.

In *Matthews v. State* (1958), 237 Ind. 677, 148 N.E.2d 334, regulations closely related to public safety were found acceptable even though they were general standards. *See Alanel Corp. v. Indianapolis Redevelopment Commission* (1958), 239 Ind. 35, 154 N.E.2d 515. But here there is a total lack of standards. So Section 401 cannot withstand a due process challenge, and is void. *See City of Plymouth v. Schultheis, supra; City of Richmond v. Dudley, supra.*

The remaining portions of the Ordinance are not affected by our holding despite the unconstitutionality of Section 401.

■ If the provisions of an act are severable so that the unconstitutional provision may be deleted without destroying the general purpose or effectiveness of the act, the remaining portion will be upheld as valid. *In re City of Mishawaka* (1972), 259 Ind. 530, 289 N.E.2d 510; *City of Indianapolis v. John Clark, Inc.* (1964), 245 Ind. 628, 196 N.E.2d 896, *reh. denied* 245 Ind. 628, 201 N.E.2d 336; *Kinslow v. Cook* (1975), Ind. App., 333 N.E.2d 819.

■ Legislative intent determines whether the invalid part of the Act is severable from the valid part. *State v. Kuebel* (1961), 241 Ind. 268, 172 N.E.2d 45; *Kinslow v. Cook, supra.* The presence of a severability clause is an indication of legislative intent, although it is not binding on courts. *Indiana Education Employment Relations Board v. Benton Community School Corp.* (1977), Ind., 365 N.E.2d 752.

While all of the above cited cases dealt with statutes, we believe they apply with equal force to locally enacted ordinances.

The Ordinance contains a severability clause [16] indicating the intent of the enacting body. Further, the remaining valid sections of the Ordinance establish standards for the collecting and disposing of trash in Howard County, including what may and

may not be disposed of in a landfill, frequency and depth of coverings, manner of transporting refuse to the landfill, a prohibition as to scavaging, and limited exceptions to the ordinance's requirements. The Ordinance also calls for a system of inspection by the County health officer, professionally engineered landfill plans, and restoration of the land following exhaustion of the landfill site.

Considering the general purpose of the Ordinance, that is, regulation of trash collection and disposal in Howard County, we find that invalidation of Section 401 relating to landfill site approval does not require the entire ordinance to be declared void. The valid portions are sufficiently severable from the invalid to allow the remainder of the Ordinance to stand.

The judgment of the trial court is reversed insofar as it upholds the validity of Section 401.

SHIELDS, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring:

I concur in the majority's treatment of Issues Two, Three, and Four and concur in the ultimate conclusion reached as to Issue One. However, I deem it advisable to express my reservation with respect to certain observations made in Footnote 5 of the majority opinion.

I do agree with the majority that this case is to be distinguished from our decision in *Thompson v. Medical Licensing Board of Indiana*, (2d Dist. 1979) Ind.App., 389 N.E.2d 43. In the *Thompson* case, there was available within the administrative structure a review process not available here. But more important, I believe, is the fact that in *Thompson*, the administrative process was appropriate because there were factual issues to be resolved along with purely constitutional questions.

---

16. SECTION 1001:

Should any section, paragraph, sentence, clause or phrase of this ordinance be declared unconstitutional, or invalid for any reason, the remainder of said ordinance shall not be affected thereby.

Unlike the majority, I find continuing merit in the principles enunciated in *State ex rel. City of South Bend v. St. Joseph Superior Court* (1958) 238 Ind. 88, 148 N.E.2d 558, and *State ex rel. City of South Bend v. Marckle* (1939) 215 Ind. 74, 18 N.E.2d 764. Of vitality is the following rationale enunciated in the *Marckle* case but which the majority finds "suspect":

"It must be admitted that the third ground of the court's opinion is misleading and confusing unless it is carefully construed and applied. It appears inconsistent to say that there is a remedy by an application for certiorari to the circuit court when the board of zoning appeals has made an illegal order, but that if the illegality complained of amounts to an invasion of the petitioner's constitutional rights, such an appeal will not lie but the constitutional infringement must be by way of a direct attack on the ordinance. Unconstitutionality is illegality, though illegality may not necessarily embrace unconstitutionality. Upon careful consideration of the court's language, it seems apparent that what was intended to be said was this: that where the invalidity of an ordinance, as a whole, is claimed because of an invasion of constitutional rights, the attack must be direct, and not by way of appeal from a zoning board. This seems sound since, manifestly, one who seeks relief from an unconstitutional ordinance is not restricted to the machinery of the ordinance for his remedy.

"If, however, it is claimed that the order of the zoning board is illegal, as applied to the petitioner, though no such claim is asserted against the ordinance as a whole, the alleged illegality cannot be asserted in such a manner as to destroy the entire ordinance, but relief to the injured party may be had by way of appeal from the illegal order." 215 Ind. at 81, 18 N.E.2d at 767.

The declaratory judgment action was appropriate in this case.